UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NATHANAEL NOLT et al., | |
| Plaintiffs, | Case No. 3:20-cv-00962 |
| v. | Judge William L. Campbell, Jr. |
| ZACHARY KNOWLES et al., | Magistrate Judge Alistair E. Newbern |
| Defendants. | |

To:     The Honorable William L. Campbell, Jr., District Judge

## REPORT AND RECOMMENDATION

Two motions to dismiss are now before the Court. Pro se Plaintiffs Nathanael Nolt and Corey Lea have moved to dismiss a counterclaim that Defendants Elwood and Paul Yoder filed against Nolt in the Christian District Court in Christian County, Kentucky. (Doc. No. 5.) Defendants Hampton Meats, Inc. and Ernest Hampton (the Hampton Defendants) have moved to dismiss Nolt and Lea's amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 20.) For the reasons that follow, the Magistrate Judge will recommend that the Court deny Nolt and Lea's motion to dismiss the Yoders' state-law counterclaim and grant the Hampton Defendants' motion to dismiss Nolt and Lea's amended complaint.

## I. Background

### A. Factual Background[1]

#### 1. Lea's Interactions with the Defendants

On or around August 11, 2020, Lea entered into a verbal agreement with Defendant Zachary Knowles for Zachary to transport four head of cattle—three already in Lea's possession and one that Lea purchased from Zachary—to Hampton Meats in Hopkinsville, Kentucky, for slaughter and processing. (Doc. No. 4.) Zachary told Lea that the cattle would be slaughtered that day. (*Id.*) About twenty days later, Lea called Zachary and Defendant Lyndi Knowles to ask about the meat. In response, the Knowleses "started engaging in multiple untruths." (*Id.* at PageID# 39.) About a week later, Lyndi told Lea that the meat would not be ready until October 1, 2020. (Doc. No. 4.) Lea said that he was going to drive to Hampton Meats and find out what was going on. (*Id.*) Lyndi then told Lea that Zachary had not processed the cows in Lea's name, as he had agreed to do. (*Id.*)

Lea sent Defendant Ernest Hampton a letter demanding the return of his processed meat, but Hampton did not respond. (*Id.*) Lea then went to the Hopkinsville Police Department to file a complaint against Hampton Meats, and an officer took Lea to the processing plant to meet with Hampton. (*Id.*) Hampton said that Zachary had represented to him that he had settled the dispute with Lea by purchasing the four cattle from him and that the Knowleses and Paul Yoder, a Hampton Meats employee, had taken the slaughtered cattle back to the Knowleses' business, ZK Ranches, for processing. (*Id.*) Lea alleges that the Knowleses, ZK Ranches, and Paul Yoder sold all of the meat from the four cattle at retail prices. (*Id.*) Lea further alleges ZK Ranches is not

---

[1] The facts in this section are drawn from Nolt and Lea's amended complaint (Doc. No. 4) and presumed true for purposes of resolving the Hampton Defendants' motion to dismiss. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

authorized to process meat and that the meat was falsely labeled as having been inspected by the United States Department of Agriculture (USDA). (*Id.*)

### 2. Nolt's Interactions with the Defendants

On August 1, 2019, Nolt agreed to lease his slaughter and processing facility to the Yoders, doing business as Riverside Labor Group or Fairview Custom Meats, for one year with a purchase option at the end of the lease. (*Id.*) "The lease agreement called for the [Yoders] to pay $5,000 for the facility and an additional $5,000 in labor for [ ] Nolt and his family." (*Id.* at PageID# 41.) By December 2019, the Yoders had fallen behind on the agreed payments because Elwood Yoder was using proceeds from the business for personal expenses. (Doc. No. 4.) The Yoders still wanted to purchase the business and asked Nolt to have the business appraised. (*Id.*) Nolt stated that he would sell the business for $1.5 million. (*Id.*) This angered the Yoders, who thought the business was only worth $700,000.00. (*Id.*) The Yoders then "put together a scheme to get" the Knowleses and ZK Ranches to buy the facility from Nolt instead. (*Id.* at PageID# 42.) Nolt also alleges that Elwood Yoder fraudulently obtained a USDA stamp to process meat in March 2020. (*Id.*)

### B. Procedural History

Nolt and Lea initiated this action on November 6, 2020, and filed an amended complaint on November 18, 2020. (Doc. Nos. 1, 4). The amended complaint alleges federal claims against the defendants for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68, and the Federal Meat Inspection Act (FMIA), 21 U.S.C. §§ 601–26, as well as claims under Tennessee law for fraud, unjust enrichment, and constructive trust. (Doc. No. 4.) Nolt and Lea each request $40,000.00 in damages and any other available relief. (*Id.*)

On the same day they filed their amended complaint, Nolt and Lea filed a motion to dismiss the Yoders' state-court counterclaim against Nolt, attaching a copy of the counterclaim and arguing that the Yoders failed to exhaust their administrative remedies before filing it in Kentucky

state court. (Doc. No. 5.) The Yoders have not appeared in this action and have not responded to Nolt and Lea's motion.[2]

On March 3, 2021, the Hampton Defendants moved to dismiss Nolt and Lea's amended complaint under Rule 12(b)(6) (Doc. No. 20), arguing that Nolt has not alleged any claims against them and that Lea has not adequately alleged claims for violation of the FMIA, RICO, fraud, unjust enrichment, or constructive trust (Doc. No. 21). Specifically, the Hampton Defendants argue that there is no private right of action under the FMIA, that Lea's fraud claim fails because Lea has not satisfied the pleading requirements of Rule 9(b), and that his constructive trust claim fails because he has not alleged that the Hampton Defendants knew he owned the cows in question. (Doc. No. 21.) The Hampton Defendants further argue that Lea's unjust enrichment and RICO claims "contain no substantive allegations against the Hampton Defendants" and should therefore be dismissed. (*Id.* at PageID# 150.)

Lea does not challenge the Hampton Defendants' assertion that there is no private right of action under the FMIA; instead he argues that he has "establishe[d] a parallel claim with common law fraud" and that his fraud allegations meet Rule 9(b)'s heightened pleading standard. (Doc. No. 32, PageID# 180, ¶ 4.) Lea also argues that the Court should not dismiss his constructive trust claim because an email from a USDA investigator that Lea attached to his response in opposition to the Hampton Defendants' motion to dismiss states that "Hampton claims after slaughter they asked Lea to pick up the product, but his partner(?) didn't until almost a month later." (Doc. No. 32, PageID# 178, ¶ 1a.) Nolt and Lea do not dispute that Nolt has not alleged any claims against the Hampton Defendants or that Lea has not adequately alleged RICO or unjust enrichment claims

---

[2] On May 25, 2021, the Clerk of Court granted Nolt and Lea's motion for entry of default with respect to E. Yoder and Riverside Labor Group, a/k/a Fairview Custom Meats. (Doc. No. 46.) Nolt and Lea did not move for entry of default with respect to P. Yoder. (Doc. No. 41.)

against them. Instead, Nolt and Lea argue that they will show through discovery that the Hampton Defendants "have been involved in several schemes to limit competition, such as plaintiff Nolt's business[,]" including, for example, switching the tags on customers' deer, beef, and pork orders. (*Id.* at PageID# 181, ¶ 8.)

The Hampton Defendants filed a reply reiterating their argument that there is no private right of action under the FMIA and arguing that the email Lea attached to his response does not cure the pleading deficiencies in the amended complaint. (Doc. No. 34.) They also argue that Nolt and Lea are "attempt[ing] to include the Hampton Defendants in their RICO claim" by asserting new facts in their response. (*Id.* at PageID# 192.)

**II.     Legal Standard**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked

5

assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Nolt and Lea proceed pro se, the Court construes their filings "'liberally'" and holds their complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**III.    Analysis**

### A.    Nolt and Lea's Motion to Dismiss the Yoders' State Counterclaim

Nolt asks the Court to dismiss a counterclaim that the Yoders filed against Nolt as part of an action in the Christian County, Kentucky, District Court for the Third Judicial District. (Doc. No. 5-1.) But this Court does not have the authority to consider claims that are proceeding in other courts.[3] If Nolt wants to challenge the Yoders' counterclaim, he must do so in the court where that claim is pending. Nolt and Lea's motion to dismiss the Yoders' state counterclaim should therefore be denied.

### B.    The Hampton Defendants' Motion to Dismiss Nolt and Lea's Amended Complaint

#### 1.    Matters Outside the Pleadings

Nolt and Lea attached an email exhibit to their opposition to the Hampton Defendants' Rule 12(b)(6) motion to dismiss that they want the Court to consider in evaluating the motion to dismiss. (Doc. No. 32.) "Generally, at the motion-to-dismiss stage, a federal court may consider

---

[3]     A federal court may consider claims originally filed in state court if the state-court action is properly removed to the federal forum. 28 U.S.C. § 1446. Although Nolt and Lea cite 28 U.S.C. § 1446 in their amended complaint as a basis for the Court's jurisdiction (Doc. No. 4), they initiated this case in this Court (Doc. No. 1).

only the plaintiff's complaint." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014). Rule 12(d) provides that, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The determination of whether to convert a motion to dismiss into a motion for summary judgment falls within the district court's discretion. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (holding that "[a] district court's decision to convert a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment under Rule 56 is reviewed for abuse of discretion"). "The court, however, in converting a motion to dismiss must take care to prevent prejudice or surprise to any party." *Ent. Prods., Inc. v. Shelby Cnty.*, No. 08-2047, 2009 WL 10699869, at *3 (W.D. Tenn. Sept. 29, 2009).

Here, the Court finds that converting the Hampton Defendants' motion to dismiss into a motion for summary judgment so as to consider the email would result in prejudice and surprise to the Hampton Defendants. The Hampton Defendants did not move for summary judgment as an alternative form of relief, and the parties have not yet had a reasonable opportunity to conduct discovery. *Cf. id.* (finding no risk of surprise and converting motion to dismiss into motion for summary judgment where defendants moved for summary judgment in the alternative); *Mincey v. Univ. of Cincinnati*, No. 1:11-cv-300, 2012 WL 1068167, at *2 (S.D. Ohio Mar. 29, 2012) (excluding affidavits and other documents attached to plaintiff's response in opposition to motion to dismiss and declining to convert motion to dismiss into summary judgment motion where "the parties ha[d] not had a reasonable opportunity for discovery"). Accordingly, the Court will not consider the email exhibit attached to Nolt and Lea's response in opposition and will not convert the Hampton Defendants' motion to dismiss into a motion for summary judgment. The Court will

only consider whether the facts alleged in Nolt and Lea's amended complaint, liberally construed, support plausible claims against the Hampton Defendants.

## 2. FMIA Claims

Nolt and Lea allege that the Hampton Defendants violated § 623(a) of the FMIA, which provides:

> **(a) Personal slaughtering and custom slaughtering for personal, household, guest, and employee uses**
>
> The provisions of this subchapter requiring inspection of the slaughter of animals and the preparation of the carcasses, parts thereof, meat and meat food products at establishments conducting such operations for commerce shall not apply to the slaughtering by any person of animals of his own raising, and the preparation by him and transportation in commerce of the carcasses, parts thereof, meat and meat food products of such animals exclusively for use by him and members of his household and his nonpaying guests and employees; nor to the custom slaughter by any person, firm, or corporation of cattle, sheep, swine or goats delivered by the owner thereof for such slaughter, and the preparation by such slaughterer and transportation in commerce of the carcasses, parts thereof, meat and meat food products of such animals, exclusively for use, in the household of such owner, by him and members of his household and his nonpaying guests and employees; nor to the custom preparation by any person, firm, or corporation of carcasses, parts thereof, meat or meat food products, derived from the slaughter by any person of cattle, sheep, swine, or goats of his own raising, or from game animals, delivered by the owner thereof for such custom preparation, and transportation in commerce of such custom prepared articles, exclusively for use in the household of such owner, by him and members of his household and his nonpaying guests and employees: *Provided*, That in cases where such person, firm, or corporation engages in such custom operations at an establishment at which inspection under this subchapter is maintained, the Secretary may exempt from such inspection at such establishment any animals slaughtered or any meat or meat food products otherwise prepared on such custom basis: *Provided further*, That custom operations at any establishment shall be exempt from inspection requirements as provided by this section only if the establishment complies with regulations which the Secretary is hereby authorized to promulgate to assure that any carcasses, parts thereof, meat or meat food products wherever handled on a custom basis, or any containers or packages containing such articles, are separated at all times from carcasses, parts thereof, meat or meat food products prepared for sale, and that all such articles prepared on a custom basis, or any containers or packages containing such articles, are plainly marked "Not for Sale" immediately after being prepared and kept so identified until delivered to the owner and that the establishment conducting the custom operation is maintained and operated in a sanitary manner.

21 U.S.C. § 623(a).

Specifically, Nolt and Lea allege that the Hampton Defendants are liable under the FMIA because they "knew or should have known that" the Knowleses, ZK Ranches, the Yoders, and Riverside Labor Group "were selling meat that was removed from the [Hampton Defendants'] facility as USDA inspected meat for [sale] to the general public, but [the meat had been] exempted [from inspection] for employee use through employee Paul Yoder." (Doc. No. 4, PageID# 49, ¶ 30.)

The Hampton Defendants argue that the FMIA does not create a private right of action and "does not expressly provide for civil damages where, as Lea alleges, meat was mislabeled and sold as USDA-inspected when it was not." (Doc. No. 21, PageID# 147.) Nolt and Lea have not challenged this assertion, and other federal courts have concluded "that no private right of action exists under the [FMIA]." *Mario's Butcher Shop & Food Ctr., Inc. v. Armour & Co.*, 574 F. Supp. 653, 654 (N.D. Ill. 1983); *see also Shoultz v. Monfort of Colo., Inc.*, 754 F.2d 318, 324 (10th Cir. 1985) (declining to imply a private remedy under the FMIA). The FMIA claims against the Hampton Defendants should therefore be dismissed.

### 3. RICO Claims

RICO imposes criminal and civil liability on "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). RICO defines "racketeering activity" to include, among other things, "any act or threat involving murder,

kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . , which is chargeable under State law and punishable by imprisonment for more than one year[.]" 18 U.S.C. § 1961(1)(A). "A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years of each other." *Heinrich*, 668 F.3d at 409 (citing 18 U.S.C. § 1961(5)). It also requires a showing "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

As the Hampton Defendants point out, the amended complaint does not contain any factual allegations accusing the Hampton Defendants of RICO violations. Nolt and Lea's response in opposition argues only that, "through discovery, [they] will show that Hampton Meat and Ernest Hampton have been involved in several schemes to limit competition, such as . . . Nolt's business." (Doc. No. 32, PageID# 181, ¶ 8.) This bare allegation, even if it were included in the amended complaint, is insufficient to support plausible RICO claims against the Hampton Defendants. The RICO claims against the Hampton Defendants should therefore be dismissed.

### 4. Fraud Claims

Nolt and Lea allege that "Hampton Meat committed fraud by allowing or sending meat belonging to . . . Lea to" the Knowleses and ZK Ranches "after receiving a letter of demand from . . . Lea informing Hampton Meat that the cattle belonged to him" and by "slaughtering animals at a USDA inspected facility and exempting the meat belonging to . . . Lea for employee use . . . while knowing[ ] the stated meat was going to be resold to the public . . . ." (Doc. No. 4, PageID# 51–52, ¶¶ 37, 39.)

To state a claim for fraud under Tennessee law, a plaintiff must allege that:

(1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without

10

belief in its truth or recklessly; (5) plaintiff reasonably relied upon the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

*Bridgestone Am.'s, Inc. v. Int'l Bus. Machs. Corp.*, 172 F. Supp. 3d 1007, 1014 (M.D. Tenn. 2016) (quoting *PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012)). Rule 9(b) requires that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Sixth Circuit has held that, to satisfy Rule 9(b), a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W.D. Mich. 1992)).

The Hampton Defendants argue that Nolt and Lea's allegations fail to state a fraud claim and do not satisfy Rule 9(b) because "[t]here is no allegation of an intentional misrepresentation by Hampton Meats" and the plaintiffs have "not alleged the time, place, and/or content of any alleged misrepresentations by Hampton Meats that [they] supposedly relied on." (Doc. No. 21, PageID# 150.) Nolt and Lea argue generally that their allegations satisfy Rule 9(b) "[b]ased upon the facts available to [them] at the time" and state that "[t]he most relevant times and places are found in the background" section of the amended complaint. (Doc. No. 32, PageID# 180–81, ¶¶ 4, 7.) Nolt and Lea further argue that, "[a]s far as the misrepresentation, [Hampton] asserted that he had no knowledge of who Corey Lea is, but he clearly told USDA investigators something to the contrary . . . ." (*Id.* at PageID# 181, ¶ 7.)

The Court finds that Nolt and Lea have not alleged that they relied on any misrepresentation made by the Hampton Defendants as required to state a claim for fraud under Tennessee law. Nolt and Lea argue that Hampton misrepresented his knowledge of Lea's identity, but that allegation

11

does not appear in the amended complaint and, even if it did, Nolt and Lea have not alleged or argued that they somehow relied on that misrepresentation and suffered damage as a result. The fraud claim against the Hampton Defendants should therefore be dismissed.

### 5. Unjust Enrichment Claims

"Under Tennessee law, the elements of an unjust enrichment claim are (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation of that benefit by the defendant, and (3) acceptance of the benefit under such circumstances that it would be inequitable for him or her to retain the benefit without payment of the value thereof." *Abriq v. Hall*, 295 F. Supp. 3d 874, 882 (M.D. Tenn. 2018) (Campbell, J.). The amended complaint alleges that Lea gave four cows to Zachary Knowles for slaughter and processing, that Zachary transported the cows to Hampton Meat for slaughtering, that the Knowleses and Paul Yoder took the slaughtered meat back to ZK Ranches for processing, and that the Knowleses and Paul Yoder sold the meat at retail prices and kept the profits. (Doc. No. 4.)

Nolt and Lea have not alleged that they conferred any benefit on the Hampton Defendants. Indeed, Nolt and Lea have not alleged that any party conferred a benefit on the Hampton Defendants in exchange for slaughtering Lea's cows. The amended complaint alleges that "Hampton represents that he did not charge the other co-defendants for slaughter and processing the 4 cows belonging to . . . Lea." (Doc. No. 4, PageID# 40.) Construing these allegations liberally, as it must, the Court finds that Nolt and Lea have not stated any plausible unjust enrichment claims against the Hampton Defendants. These claims should therefore be dismissed.

### 6. Constructive Trust Claims

Nolt and Lea allege that the Hampton Defendants "violated the constructive trust [when] Hampton Meat and Ernest Hampton transported meat belonging to . . . Lea back" to the Knowleses and ZK Ranches "after receiving a letter of demand for the meat . . . and without approved USDA

12
Case 3:20-cv-00962   Document 52   Filed 06/07/21   Page 12 of 13 PageID #: 300

packaging." (Doc. No. 4, PageID# 46, ¶ 21.) Under Tennessee law, "'constructive trust' is not a cause of action, but rather a remedy used by courts to enforce substantive rights." *Thompson v. Am. Gen. Life & Accident Ins. Co.*, 404 F. Supp. 2d 1023, 1029 n.2 (M.D. Tenn. 2005) (citing *In re Del-Met Corp.*, 322 B.R. 781, 829 (Bankr. M.D. Tenn. 2005)); *see also Boynton v. Headwaters, Inc.*, No. 1:02-cv-01111, 2011 WL 13076900, at *3 (W.D. Tenn. Apr. 11, 2011) ("Under Tennessee law, a constructive trust is a remedy, not an independent cause of action."). Because Nolt and Lea have not stated any plausible underlying claims against the Hampton Defendants, they cannot show that they are entitled to the remedy of a constructive trust. *See Boynton*, 2011 WL 13076900, at *3.

**IV.     Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that Nolt and Lea's motion to dismiss the Yoders' state counterclaim (Doc. No. 5) be DENIED and that the Hampton Defendants' motion to dismiss Nolt and Lea's amended complaint (Doc. No. 20) be GRANTED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 7th day of June, 2021.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge